MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ANGEL ORTEGA ALMONTE, FIDEL
GUZMAN VASQUEZ, FILIMON
GONZALEZ VEGA, GERARDO MENDOZA
VAZQUEZ, LORENZO GALINDO,
MARCELO ORDAZ, and MIGUEL ANGEL
GALICIA JIMENEZ, *individually and on*
*behalf of others similarly situated,*

　　　　　　　　　　　*Plaintiffs*,

　　　　-against-

HURRICANE STRAUSS, INC.  (D/B/A
WESTVILLE CHELSEA), LAYLA TOV
INC.  (D/B/A WESTVILLE HUDSON),
JAY'S NICKELS AND DIMES, INC.  (D/B/A
WESTVILLE WEST), JAY STRAUSS,
GEORGE MOTZKIN, BRETT TRACEY, LIZ
DOE, ALEX DOE, SHAWN DOE, PETER
DOE, OLIVER DOE, and CHRIS DOE,

　　　　　　　　　　*Defendants.*

-------------------------------------------------------X

**COMPLAINT**


**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

　　　　Plaintiffs Angel Ortega Almonte, Fidel Guzman Vasquez, Filimon Gonzalez Vega,

Gerardo Mendoza Vazquez, Lorenzo Galindo, Marcelo Ordaz, and Miguel Angel Galicia Jimenez,

individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through

their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as

against Hurricane Strauss, Inc. (d/b/a Westville Chelsea), Layla Tov Inc. (d/b/a Westville Hudson),

Jay's Nickels And Dimes, Inc. (d/b/a Westville West), ("Defendant Corporations"), Jay Strauss,

George Motzkin, Brett Tracey, Liz Doe, Alex Doe, Shawn Doe, Peter Doe, Oliver Doe, and Chris Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are both current and former employees of Defendants Hurricane Strauss, Inc. (d/b/a Westville Chelsea), Layla Tov Inc. (d/b/a Westville Hudson), Jay's Nickels And Dimes, Inc. (d/b/a Westville West), Jay Strauss, George Motzkin, Brett Tracey, Liz Doe, Alex Doe, Shawn Doe, Peter Doe, Oliver Doe, and Chris Doe.

2.       Defendants own, operate, or control three American restaurants, located at 246 West 18th Street, New York, New York 10011 under the name "Westville Chelsea", at 333 Hudson Street, New York, New York 10013 under the name "Westville Hudson", and at 210 West 10th Street, New York, New York 10014 under the name "Westville West".

3.      Upon information and belief, individual Defendants Jay Strauss, George Motzkin, Brett Tracey, Liz Doe, Alex Doe, Shawn Doe, Peter Doe, Oliver Doe, and Chris Doe, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs have been employed as delivery workers at the three American restaurants located at 246 West 18th Street, New York, New York 10011, 333 Hudson Street, New York, New York 10013, and 210 West 10th Street, New York, New York 10014.

5.      Plaintiffs have ostensibly been employed as delivery workers. However, they have been required to spend a considerable part of their work day performing non-tipped duties, including but not limited to taking out the trash, folding cardboard boxes, packing dressings in containers for delivery, stocking beverages in the refrigerator, sweeping the station, cleaning the patio and bathrooms, mopping, transporting inventory to and from the other restaurants, preparing salad

dressing, putting away the bicycles at the end of the day, and packing the orders for delivery (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs have worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they have worked.

7.      Rather, Defendants have failed to maintain accurate recordkeeping of the hours worked and have failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants have failed to pay Plaintiffs the required "spread of hours" pay for any day in which they have had to work over 10 hours a day.

9.      Defendants have employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties have required a significant amount of time spent performing the non-tipped duties alleged above.

10.      Regardless, at all relevant times, Defendants have paid Plaintiffs at the lowered tip-credited rate.

11.      However, under both the FLSA and NYLL, Defendants are not entitled to take a tip credit because Plaintiffs' non-tipped duties have exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.      Upon information and belief, Defendants have employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This has allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and has enabled them to pay them above the tip-credit rate, but below the minimum wage.

13.      In addition, Defendants have maintained a policy and practice of unlawfully

appropriating Plaintiffs' and other tipped employees' tips and have made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

14.     Defendants' conduct has extended beyond Plaintiffs to all other similarly situated employees.

15.     At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate three American restaurants located in this district. Further, Plaintiffs have been employed by Defendants in this district.

## **PARTIES**

*Plaintiffs*

20.      Plaintiff Angel Ortega Almonte ("Plaintiff Ortega" or "Mr. Ortega") is an adult individual residing in New York County, New York.

21.      Plaintiff Ortega was employed by Defendants at Westville Chelsea from approximately January 2016 until on or about July 2018.

22.      Plaintiff Fidel Guzman Vasquez ("Plaintiff Guzman" or "Mr. Guzman") is an adult individual residing in Bronx County, New York.

23.      Plaintiff Guzman was employed by Defendants at Westville Chelsea from approximately May 2014 until on or about April 26, 2019.

24.      Plaintiff Filimon Gonzalez Vega ("Plaintiff Gonzalez" or "Mr. Gonzalez") is an adult individual residing in New York County, New York.

25.      Plaintiff Gonzalez was employed by Defendants at Westville Hudson from approximately September 2015 until on or about March 29, 2019.

26.      Plaintiff Gerardo Mendoza Vazquez ("Plaintiff Mendoza" or "Mr. Mendoza") is an adult individual residing in Bronx County, New York.

27.      Plaintiff Mendoza has been employed by Defendants at Westville Hudson from approximately June 2017 until the present date.

28.     Plaintiff Lorenzo Galindo ("Plaintiff Galindo" or "Mr. Galindo") is an adult individual residing in Bronx County, New York.

29.     Plaintiff Galindo was employed by Defendants at Westville Chelsea from approximately January 2018 until on or about March 13, 2019.

30.     Plaintiff Marcelo Ordaz ("Plaintiff Ordaz" or "Mr. Ordaz") is an adult individual residing in Queens County, New York.

31.     Plaintiff Ordaz was employed by Defendants at Westville Chelsea and Westville Hudson from approximately 2008 until on or about June 2014 and from approximately January 2015 until on or about November 2018.

32.     Plaintiff Miguel Angel Galicia Jimenez ("Plaintiff Galicia" or "Mr. Galicia") is an adult individual residing in Kings County, New York.

33.     Plaintiff Galicia was employed by Defendants at Westville West from approximately March 2016 until on or about May 19, 2019.

*Defendants*

34.     At all relevant times, Defendants own, operate, or control three American restaurants, located at 246 West 18th Street, New York, New York 10011 under the name "Westville Chelsea", at 333 Hudson Street, New York, New York 10013 under the name "Westville Hudson", and at 210 West 10th Street, New York, New York 10014 under the name "Westville West".

35.     Upon information and belief, Hurricane Strauss, Inc. (d/b/a Westville Chelsea) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 246 West 18th Street, New York, New York 10011.

36.     Upon information and belief, Layla Tov Inc. (d/b/a Westville Hudson) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 333 Hudson Street, New York, New York 10013.

37.     Upon information and belief, Jay's Nickels And Dimes, Inc. (d/b/a Westville West) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 210 West 10th Street, New York, New York 10014.

38.     Defendant Jay Strauss is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jay Strauss is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Jay Strauss possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

39.     Defendant George Motzkin is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant George Motzkin is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant George Motzkin possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

40.     Defendant Brett Tracey is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Brett Tracey is sued individually in his capacity as a manager of Defendant Corporations. Defendant Brett Tracey possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

41.     Defendant Liz Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Liz Doe is sued individually in her capacity as a manager of Defendant Corporations. Defendant Liz Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

42.     Defendant Alex Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Alex Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Alex Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

43.     Defendant Shawn Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Shawn Doe is sued individually in

his capacity as a manager of Defendant Corporations. Defendant Shawn Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

44.     Defendant Peter Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Peter Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Peter Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

45.     Defendant Oliver Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Oliver Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Oliver Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

46.     Defendant Chris Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Chris Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Chris Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations.

He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

47.     Defendants operate three American restaurants located in the Chelsea and West Village sections of Manhattan in New York City.

48.     Individual Defendants, Jay Strauss, George Motzkin, Brett Tracey, Liz Doe, Alex Doe, Shawn Doe, Peter Doe, Oliver Doe, and Chris Doe, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

49.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

50.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

51.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

52.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

53.     Upon information and belief, Individual Defendants Jay Strauss and George Motzkin operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f)  intermingling assets and debts of their own with Defendant Corporations,

g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

54.     At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants have had the power to hire and fire Plaintiffs, have controlled the terms and conditions of employment, and have determined the rate and method of any compensation in exchange for Plaintiffs' services.

55.    In each year from 2013 to the present date, Defendants have, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

56.    In addition, upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce. As an example, numerous items that are used in the restaurants on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

57.    Plaintiffs are both current and former employees of Defendants who ostensibly have been employed as delivery workers. However, they have spent over 20% of each shift performing the non-tipped duties described above.

58.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Angel Ortega Almonte*

59.    Plaintiff Ortega was employed by Defendants from approximately January 2016 until on or about July 2018.

60.    Defendants ostensibly employed Plaintiff Ortega as a delivery worker.

61.    However, Plaintiff Ortega was also required to spend a significant portion of his work day performing the non-tipped duties described above.

62.    Although Plaintiff Ortega ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

63.    Plaintiff Ortega regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

64.    Plaintiff Ortega's work duties required neither discretion nor independent judgment.

65.     From approximately January 2016 until on or about July 2018, Plaintiff Ortega worked from approximately 4:30 p.m. until on or about 12:00 a.m., four days a week (typically 30 hours per week).

66.     Throughout his employment, Defendants paid Plaintiff Ortega his wages by check.

67.     From approximately January 2016 until on or about May 2017, Defendants paid Plaintiff Ortega $7.50 per hour.

68.     From approximately June 2017 until on or about December 2017, Defendants provided Plaintiff Ortega with paystubs that incorrectly stated that he was paid $11.00 per hour when he was actually paid $9.50 per hour.

69.     From approximately June 2017 until on or about July 2018, Defendants paid Plaintiff Ortega $9.50 per hour.

70.     From approximately January 2018 until on or about July 2018, Defendants provided Plaintiff Ortega with paystubs that incorrectly stated that he was paid $10.85 per hour when he was actually paid $9.50 per hour.

71.     Plaintiff Ortega's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

72.     For example, Defendants required Plaintiff Ortega to work an additional 30 minutes to one hour past his scheduled departure time everyday, and did not pay him for the additional time he worked.

73.     Defendants never granted Plaintiff Ortega any breaks or meal periods of any kind.

74.     Nevertheless, Defendants deducted $2 per day from Plaintiff Ortega's weekly paycheck for meals he never ate.

75.     Plaintiff Ortega was never notified by Defendants that his tips were being included as an offset for wages.

76.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ortega's wages.

77.     Defendants withheld a portion of Plaintiff Ortega's tips; specifically, Defendants withheld $100 from the tips customers had paid Plaintiff Ortega every week.

78.     Plaintiff Ortega was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

79.     On a number of occasions, Defendants required Plaintiff Ortega to sign a document, the contents of which he was not allowed to review in detail.

80.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ortega regarding overtime and wages under the FLSA and NYLL.

81.     Defendants did not provide Plaintiff Ortega an accurate statement of wages, as required by NYLL 195(3).

82.     However, Defendants adjusted Plaintiff Ortega's paystubs so that they reflected inaccurate wages and hours worked.

83.     Defendants did not give any notice to Plaintiff Ortega, in English and in Spanish (Plaintiff Ortega's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

84.     Defendants required Plaintiff Ortega to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a basket, and lights.

*Plaintiff Fidel Guzman Vasquez*

85.     Plaintiff Guzman was employed by Defendants from approximately May 2014 until on or about April 26, 2019.

86.     Defendants ostensibly employed Plaintiff Guzman as a delivery worker.

87.     However, Plaintiff Guzman was also required to spend a significant portion of his work day performing the non-tipped duties described above.

88.     Although Plaintiff Guzman ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

89.     Plaintiff Guzman regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

90.     Plaintiff Guzman's work duties required neither discretion nor independent judgment.

91.     From approximately May 2014 until on or about January 2019, Plaintiff Guzman worked from approximately 11:00 a.m. until on or about 9:00 p.m., on Mondays, from approximately 11:00 a.m. until on or about 4:30 p.m., on Tuesdays, from approximately 10:00 a.m. until on or about 3:00 p.m., on Thursdays, and from approximately 9:30 a.m. until on or about 2:00 p.m., on Fridays (typically 25 hours per week).

92.     From approximately February 2019 until on or about April 26, 2019, Plaintiff Guzman worked from approximately 9:30 a.m. until on or about either 2:00 p.m. or 4:30 p.m. or 9:00 p.m., on Mondays, from approximately 11:00 a.m. until on or about 4:30 p.m., on Tuesdays, from approximately 10:00 a.m. until on or about 3:00 p.m., on Thursdays, and from approximately 9:30 a.m. until on or about 2:00 p.m., on Fridays (typically 27 hours per week).

93.     Throughout his employment, Defendants paid Plaintiff Guzman his wages by check.

94.     From approximately May 2014 until on or about December 2015, Defendants paid Plaintiff Guzman $5.65 per hour.

95.     From approximately January 2016 until on or about December 2017, Defendants paid Plaintiff Guzman $7.50 per hour.

96.     From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Guzman $10.85 per hour.

97.     From approximately January 2018 until on or about December 2018, Defendants provided Plaintiff Guzman with paystubs that incorrectly stated that he was paid $13.00 per hour when he was actually paid $10.85 per hour.

98.     From approximately January 2019 until on or about April 26, 2019, Defendants paid Plaintiff Guzman $12.50 per hour.

99.     From approximately January 2019 until on or about April 26, 2019, Defendants provided Plaintiff Guzman with paystubs that incorrectly stated that he was paid $15.00 per hour when he was actually paid $12.50 per hour.

100.    Plaintiff Guzman's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

101.    For example, Defendants required Plaintiff Guzman to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

102.    Defendants never granted Plaintiff Guzman any breaks or meal periods of any kind.

103.    Plaintiff Guzman was never notified by Defendants that his tips were being included as an offset for wages.

104.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Guzman's wages.

105.    Defendants withheld a portion of Plaintiff Guzman's tips; specifically, Defendants withheld a portion of all the tips customers wrote in for Plaintiff Guzman on their credit card payments.

106.    Plaintiff Guzman was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

107.    On a number of occasions, Defendants required Plaintiff Guzman to sign a document, the contents of which he was not allowed to review in detail.

108.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Guzman regarding overtime and wages under the FLSA and NYLL.

109.    Defendants did not provide Plaintiff Guzman an accurate statement of wages, as required by NYLL 195(3).

110.    However, Defendants adjusted Plaintiff Guzman's paystubs so that they reflected inaccurate wages and hours worked.

111.    Defendants did not give any notice to Plaintiff Guzman, in English and in Spanish (Plaintiff Guzman's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

112.    Defendants required Plaintiff Guzman to purchase "tools of the trade" with his own funds—including a bicycle, bicycle maintenance per year, a basket, and a set of lights.

*Plaintiff Filimon Gonzalez Vega*

113.    Plaintiff Gonzalez was employed by Defendants from approximately September 2015 until on or about March 29, 2019.

114.    Defendants ostensibly employed Plaintiff Gonzalez as a delivery worker.

115.    However, Plaintiff Gonzalez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

116.    Although Plaintiff Gonzalez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

117.    Plaintiff Gonzalez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

118.    Plaintiff Gonzalez's work duties required neither discretion nor independent judgment.

119.    From approximately September 2015 until on or about December 2017, Plaintiff Gonzalez worked from approximately 4:30 p.m. until on or about 10:00 p.m., Mondays, from approximately 6:00 p.m. until on or about 11:00 p.m., Tuesdays and Sundays, and from approximately 5:00 p.m. until on or about 11:00 p.m., Wednesdays and Thursdays (typically 21.5 hours per week).

120.    From approximately January 2018 until on or about March 29, 2019, Plaintiff Gonzalez worked from approximately 4:30 p.m. until on or about 9:30 p.m., Mondays and Wednesdays, from approximately 6:00 p.m. until on or about 10:00 p.m., Tuesdays and Sundays, from approximately 5:00 p.m. until on or about 9:30 p.m., Thursdays, and from approximately 6:00 p.m. until on or about 10:30 p.m., Fridays (typically 27 hours per week).

121.    Throughout his employment, Defendants paid Plaintiff Gonzalez his wages by check.

122.    From approximately September 2015 until on or about December 2017, Defendants paid Plaintiff Gonzalez $7.50 per hour.

123.    From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Gonzalez $8.65 per hour.

124.    From approximately January 2019 until on or about March 29, 2019, Defendants paid Plaintiff Gonzalez $12.50 per hour.

125.    However, from approximately January 2019 until on or about March 29, 2019, Defendants provided Plaintiff Ortega with paystubs that incorrectly stated that he was paid $15.00 per hour but was actually paid $12.50 per hour.

126.    Plaintiff Gonzalez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

127.    For example, Defendants required Plaintiff Gonzalez to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

128.    Defendants never granted Plaintiff Gonzalez any breaks or meal periods of any kind.

129.    Nevertheless, Defendants deducted $20 from Plaintiff Gonzalez's weekly paycheck for meals he never ate.

130.    Plaintiff Gonzalez was never notified by Defendants that his tips were being included as an offset for wages.

131.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gonzalez's wages.

132.    Defendants withheld a portion of Plaintiff Gonzalez's tips; specifically, Defendants withheld a portion of all the tips customers wrote in for Plaintiff Gonzalez.

133.    Plaintiff Gonzalez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

134.    On a number of occasions, Defendants required Plaintiff Gonzalez to sign a document, the contents of which he was not allowed to review in detail.

135.    In addition, in order to get paid, Plaintiff Gonzalez was required to sign a document in which Defendants misrepresented the hours that he worked per week.

136.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gonzalez regarding overtime and wages under the FLSA and NYLL.

137.    Defendants did not provide Plaintiff Gonzalez an accurate statement of wages, as required by NYLL 195(3).

138.    However, Defendants adjusted Plaintiff Gonzalez's paystubs so that they reflected inaccurate wages and hours worked.

139.    Defendants did not give any notice to Plaintiff Gonzalez, in English and in Spanish (Plaintiff Gonzalez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

140.    Defendants required Plaintiff Gonzalez to purchase "tools of the trade" with his own funds—including two bicycles, a helmet, and bicycle maintenance per month.

*Plaintiff Gerardo Mendoza Vazquez*

141.    Plaintiff Mendoza has been employed by Defendants from approximately June 2017 until the present date.

142.    Defendants have employed Plaintiff Mendoza as a delivery worker.

143.    However, Plaintiff Mendoza has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

144.    Although Plaintiff Mendoza has been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

145.    Plaintiff Mendoza has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

146.    Plaintiff Mendoza's work duties have required neither discretion nor independent judgment.

147.    From approximately June 2017 until on or about April 2019, Plaintiff Mendoza worked from approximately 4:00 p.m. until on or about 9:30 p.m., five days a week and from approximately 5:00 p.m. until on or about 10:00 p.m., one day a week (typically 32.5 hours per week).

148.    From approximately May 2019 until the present date, Plaintiff Mendoza has worked from approximately 4:00 p.m. until on or about 9:30 p.m., four days a week and from approximately 5:00 p.m. until on or about 10:00 p.m., one day a week (typically 27 hours per week).

149.    Throughout his employment, Defendants have paid Plaintiff Mendoza his wages by check.

150.    From approximately June 2017 until on or about December 2017, Defendants paid Plaintiff Mendoza $12.75 per hour.

151.    From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Mendoza $13.00 per hour.

152.    From approximately January 2019 until the present date, Defendants have paid Plaintiff Mendoza $15.00 per hour.

153.   Defendants have never granted Plaintiff Mendoza any breaks or meal periods of any kind.

154.   Nevertheless, Defendants have deducted $20 from Plaintiff Mendoza's weekly paycheck for meals he has never eaten.

155.   Plaintiff Mendoza has never been notified by Defendants that his tips are being included as an offset for wages.

156.   Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Mendoza's wages.

157.   Defendants have withheld a portion of Plaintiff Mendoza's tips; specifically, Defendants have withheld a portion of all the tips customers wrote in for Plaintiff Mendoza.

158.   Plaintiff Mendoza has not been required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

159.   On a number of occasions, Defendants have required Plaintiff Mendoza to sign a document, the contents of which he has not been allowed to review in detail, in order to release his weekly pay.

160.   No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Mendoza regarding overtime and wages under the FLSA and NYLL.

161.   Defendants have never provided Plaintiff Mendoza an accurate statement of wages, as required by NYLL 195(3).

162.   However, Defendants have adjusted Plaintiff Mendoza's paystubs so that they reflected inaccurate wages and hours worked.

163.    Defendants have never given any notice to Plaintiff Mendoza, in English and in Spanish (Plaintiff Mendoza's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

164.    Defendants have required Plaintiff Mendoza to purchase "tools of the trade" with his own funds—including a basket and bicycle maintenance per month.

*Plaintiff Lorenzo Galindo*

165.    Plaintiff Galindo was employed by Defendants from approximately January 2018 until on or about March 13, 2019.

166.    Defendants ostensibly employed Plaintiff Galindo as a delivery worker.

167.    However, Plaintiff Galindo was also required to spend a significant portion of his work day performing the non-tipped duties described above.

168.    Although Plaintiff Galindo ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

169.    Plaintiff Galindo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

170.    Plaintiff Galindo's work duties required neither discretion nor independent judgment.

171.    From approximately January 2018 until on or about May 2018, Plaintiff Galindo worked from approximately 9:30 a.m. until on or about either 2:00 p.m. or 4:30 p.m. or 9:00 p.m., two days a week, from approximately 4:30 p.m. until on or about 9:00 p.m., one day a week, from approximately 12:00 p.m. until on or about 4:30 p.m., one day a week, and from approximately 5:30 p.m. until on or about 9:00 p.m., one day a week (typically 39.5 hours per week).

172.    From approximately June 2018 until on or about March 13, 2019, Plaintiff Galindo worked from approximately 9:30 a.m. until on or about either 2:00 p.m. or 4:30 p.m. or 9:00 p.m.,

two days a week, from approximately 11:30 a.m. until on or about 3:30 p.m., two days a week, and from approximately 5:30 p.m. until on or about 9:00 p.m., two days a week (typically 37 hours per week).

173.    Throughout his employment, Defendants paid Plaintiff Galindo his wages by check.

174.    From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Galindo $10.85 per hour.

175.    From approximately January 2019 until on or about March 13, 2019, Defendants paid Plaintiff Galindo $12.50 per hour.

176.    For approximately one week, Defendants did not pay Plaintiff Galindo any wages for his work.

177.    Defendants never granted Plaintiff Galindo any breaks or meal periods of any kind.

178.    Nevertheless, Defendants deducted $20 from Plaintiff Galindo's weekly paycheck for meals he never ate.

179.    Plaintiff Galindo was never notified by Defendants that his tips were being included as an offset for wages.

180.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Galindo's wages.

181.    Defendants withheld a portion of Plaintiff Galindo's tips; specifically, Defendants withheld a portion of all the tips customers wrote in for Plaintiff Galindo.

182.    On a number of occasions, Defendants required Plaintiff Galindo to sign a document, the contents of which he was not allowed to review in detail.

183.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Galindo regarding overtime and wages under the FLSA and NYLL.

184.    Defendants did not provide Plaintiff Galindo an accurate statement of wages, as required by NYLL 195(3).

185.    Defendants did not give any notice to Plaintiff Galindo, in English and in Spanish (Plaintiff Galindo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

186.    Defendants required Plaintiff Galindo to purchase "tools of the trade" with his own funds—including a helmet, a set of lights, a bicycle, a basket, and bicycle maintenance.

*Plaintiff Marcelo Ordaz*

187.    Plaintiff Ordaz was employed by Defendants from approximately 2008 until on or about June 2014 and from approximately January 2015 until on or about November 2018.

188.    Defendants ostensibly employed Plaintiff Ordaz as a delivery worker.

189.    However, Plaintiff Ordaz was also required to spend a significant portion of his work day performing the non-tipped duties described above.

190.    Although Plaintiff Ordaz ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

191.    Plaintiff Ordaz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

192.    Plaintiff Ordaz's work duties required neither discretion nor independent judgment.

193.    Throughout his employment with Defendants, Plaintiff Ordaz regularly worked in excess of 40 hours per week.

194.    From approximately June 2013 until on or about June 2014, Plaintiff Ordaz worked at the Westville Chelsea location from approximately 11:00 a.m. until on or about 10:00 p.m., three

days a week and from approximately 4:00 p.m. until on or about 10:00 p.m. to 11:00 p.m., three days

a week (typically 51 to 54 hours per week).

195.    From approximately January 2015 until on or about November 2018, Plaintiff Ordaz

worked at the Westville Hudson location from approximately 5:00 p.m. until on or about 11:00 p.m.

to 12:00 a.m., six days a week (typically 36 to 42 hours per week).

196.    Throughout his employment, Defendants paid Plaintiff Ordaz his wages by check.

197.    From approximately June 2013 until on or about June 2014, Defendants paid Plaintiff

Ordaz $5.00 per hour.

198.    From approximately January 2015 until on or about November 2018, Plaintiff Ordaz

didn't receive any compensation for his hours worked.

199.    From approximately January 2015 until on or about November 2018, Defendants did

not pay Plaintiff Ordaz any wages for his work.

200.    Plaintiff Ordaz's pay did not vary even when he was required to stay later or work a

longer day than his usual schedule.

201.    For example, Defendants required Plaintiff Ordaz to work an additional hour past his

scheduled departure time six days a week, and did not pay him for the additional time he worked.

202.    In addition, Defendants deducted $20 from Plaintiff Ordaz's weekly paycheck for

meals he never ate.

203.    Plaintiff Ordaz was never notified by Defendants that his tips were being included as

an offset for wages.

204.    Defendants did not account for these tips in any daily or weekly accounting of

Plaintiff Ordaz's wages.

205.   Defendants withheld a portion of Plaintiff Ordaz's tips; specifically, Defendants withheld a portion of all the tips customers wrote in for Plaintiff Ordaz through Seamless.

206.   Plaintiff Ordaz was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

207.   Defendants required Plaintiff Ordaz to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

208.   On a number of occasions, Defendants required Plaintiff Ordaz to sign a document, the contents of which he was not allowed to review in detail.

209.   In addition, in order to get paid, Plaintiff Ordaz was required to sign a document in which Defendants misrepresented the hours that he worked per week.

210.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ordaz regarding overtime and wages under the FLSA and NYLL.

211.   Defendants did not provide Plaintiff Ordaz an accurate statement of wages, as required by NYLL 195(3).

212.   However, Defendants adjusted Plaintiff Ordaz's paystubs so that they reflected inaccurate wages and hours worked.

213.   Defendants did not give any notice to Plaintiff Ordaz, in English and in Spanish (Plaintiff Ordaz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

214.   Defendants required Plaintiff Ordaz to purchase "tools of the trade" with his own funds—including six bicycles, seven helmets, four baskets, and bicycle maintenance per year.

*Plaintiff Miguel Angel Galicia Jimenez*

215. Plaintiff Galicia was employed by Defendants from approximately March 2016 until on or about May 19, 2019.

216. Defendants ostensibly employed Plaintiff Galicia as a delivery worker.

217. However, Plaintiff Galicia was also required to spend a significant portion of his work day performing the non-tipped duties described above.

218. Although Plaintiff Galicia ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

219. Plaintiff Galicia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

220. Plaintiff Galicia's work duties required neither discretion nor independent judgment.

221. From approximately March 2016 until on or about July 2017, Plaintiff Galicia worked at the Westville West location from approximately 3:00 p.m. until on or about 10:00 p.m., six days a week (typically 42 hours per week).

222. From approximately July 2017 until on or about May 11, 2019, Plaintiff Galicia worked from approximately 6:00 p.m. until on or about 10:00 p.m., five days a week (typically 20 hours per week).

223. From approximately May 12, 2019 until on or about May 19, 2019, Plaintiff Galicia worked from approximately 7:00 p.m. until on or about 10:00 p.m., four days a week (typically 12 hours per week).

224. Throughout his employment, Defendants paid Plaintiff Galicia his wages by check.

225. From approximately March 2016 until on or about December 2018, Defendants paid Plaintiff Galicia a fixed salary of $180 per week.

226.    From approximately January 2019 until on or about May 19, 2019, Defendants paid Plaintiff Galicia a fixed salary of $200 per week.

227.    From approximately May 12, 2019 until on or about May 19, 2019, Defendants did not pay Plaintiff Galicia any wages for his work.

228.    In addition, Defendants deducted $12 per meal from Plaintiff Galicia's weekly paycheck for meals he never ate.

229.    Plaintiff Galicia was never notified by Defendants that his tips were being included as an offset for wages.

230.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Galicia's wages.

231.    Defendants withheld a portion of Plaintiff Galicia's tips; specifically, Defendants withheld a portion of all the tips customers wrote in for Plaintiff Galicia.

232.    On a number of occasions, Defendants required Plaintiff Galicia to sign a document, the contents of which he was not allowed to review in detail.

233.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Galicia regarding overtime and wages under the FLSA and NYLL.

234.    Defendants did not provide Plaintiff Galicia an accurate statement of wages, as required by NYLL 195(3).

235.    However, Defendants adjusted Plaintiff Galicia's paystubs so that they reflected inaccurate wages and hours worked.

236.    Defendants did not give any notice to Plaintiff Galicia, in English and in Spanish (Plaintiff Galicia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

237.     At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

238.     Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they have been owed for the hours they have worked.

239.     Defendants' pay practices have resulted in Plaintiffs not receiving payment for all their hours worked, and have resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

240.     Defendants have habitually required Plaintiffs to work additional hours beyond their regular shifts but have not provided them with any additional compensation.

241.     Defendants have required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

242.     Plaintiffs and all similarly situated employees, have ostensibly been employed as tipped employees by Defendants, although their actual duties have included a significant amount of time spent performing the non-tipped duties outlined above.

243.      Plaintiffs' duties have not been incidental to their occupation as tipped workers, but instead have constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

244.     Plaintiffs and all other tipped workers have been paid at a rate that is below the minimum wage by Defendants.

245.    However, under state law, Defendants are not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceed 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

246.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

247.    In violation of federal and state law as codified above, Defendants have classified Plaintiffs and other tipped workers as tipped employees, and have paid them at a rate that is below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

248.    Defendants have failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

249.    Defendants have failed to inform Plaintiffs who have received tips, that their tips are being credited towards the payment of the minimum wage.

250.    Defendants have failed to maintain a record of tips earned by Plaintiffs who have worked as delivery workers for the tips they have received.

251.    As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs who have received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice has included depriving delivery workers of a portion of the tips earned during the course of employment.

252.    Defendants have unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

253.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

254.    Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

255.    Defendants' time keeping system has not reflected the actual hours that Plaintiffs have worked.

256.    On a number of occasions, Defendants have required Plaintiffs to sign a document the contents of which they have not been allowed to review in detail.

257.    Defendants have required Plaintiffs to sign a document that has reflected inaccurate or false hours worked.

258.    Defendants have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

259.    Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) have worked, and to avoid paying Plaintiffs properly for their full hours worked.

260.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

261.     Defendants' unlawful conduct is intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

262.     Defendants have failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

263.     Defendants have failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

264.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf

of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

265.    At all relevant times, Plaintiffs and other members of the FLSA Class have been similarly situated in that they have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

266.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

267.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

268.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants have had the power to hire and fire Plaintiffs (and the FLSA Class Members), have controlled the terms and conditions of their employment, and have determined the rate and method of any compensation in exchange for their employment.

269.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

270.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

271.    Defendants have failed to pay Plaintiffs (and the FLSA Class members) at the

applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

272.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

273.    Plaintiffs (and the FLSA Class members) have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

274.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

275.    Defendants, in violation of 29 U.S.C. § 207(a)(1), have failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

276.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation has been willful within the meaning of 29 U.S.C. § 255(a).

277.    Plaintiffs (and the FLSA Class members) have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

278.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

279.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants have had the power to hire and fire Plaintiffs, have controlled the terms and conditions of their employment, and have determined the rates and methods of any compensation in exchange for their employment.

280.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs less than the minimum wage.

281.    Defendants' failure to pay Plaintiffs the minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

282.    Plaintiffs have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

283.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

284.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, have failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

285.    Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of N.Y. Lab. Law § 663.

286.    Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

287.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

288.    Defendants have failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours has exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

289.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours is willful within the meaning of NYLL § 663.

290.     Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

291.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

292.     Defendants have failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

293.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

294.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

295.     With each payment of wages, Defendants have failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages;

name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

296.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

297.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

298.     Defendants have required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

299.     Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

### OF THE NEW YORK LABOR LAW

300.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

301.     At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

302.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities

received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

303.     Defendants have unlawfully misappropriated a portion of Plaintiffs' tips that have been received from customers.

304.     Defendants have knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

305.     Plaintiffs have been damaged in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**

**UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION**

**OF THE NEW YORK LABOR LAW**

306.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

307.     At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

308.     Defendants have made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meals they never ate.

309.     The deductions made from Plaintiffs' wages were not authorized or required by law.

310.     Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

311.     Plaintiffs have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA are willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

- 40 -

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants have violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)      Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order are willful as to Plaintiffs;

(m)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

### JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

June 28, 2019

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:     _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———

Faillace@employmentcompliance.com

May 28, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Angel Ortega Almonte (a.k.a. Angel Ortega)

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     28 de mayo 2019

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 3, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Fidel Guzman Vasquez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       3 de Mayo del 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

April 12, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                    Filimon Gonzalez Vega

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     12 de abril 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

June 4, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Gerardo Mendoza Vazquez

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     4 de Junio 2019

_Certified as a minority-owned business in the State of New York_

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 14, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                            Lorenzo Galindo
Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                  *Lorenzo galindo*

Date / Fecha:                         14 de marzo de 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 8, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Marcelo Ordaz

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    8 de Mayo 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 24, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Miguel Angel Galicia Jimenez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     24 de junio 2019

*Certified as a minority-owned business in the State of New York*